# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA DIAMOS, Individually and on Behalf of All Others Similarly-Situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC. and INTERNATIONAL VITAMIN CORPORATION,<br><br>Defendants. | Case No. 2:19-cv-05526 SVW (GJSx)<br><br>[CLASS ACTION]<br><br>**STIPULATED PROTOCOL FOR PRODUCTION OF ELECTRONICALLY-STORED DOCUMENTS**<br><br>Action Filed: June 25, 2019<br><br>Trial Date: None set |

The parties in the above-captioned action (collectively "the Parties"), by and through their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol for the search for and production of documents and electronically-stored information (the "ESI Protocol").

**I. SCOPE**

A. Federal Rule of Civil Procedure 34 permits the parties to specify the form or forms in which electronically-stored information ("ESI") is to be produced. Pursuant to Rule 34, this ESI Protocol shall govern the production of hard copy documents and other physical materials ("Documents") and ESI by the parties in the above-captioned action. The ESI Protocol shall also govern productions made by

any third party who is subpoenaed in this action, unless otherwise agreed to by the issuing party and the third party.  Accordingly, this ESI Protocol shall be attached to any subpoena issued in this litigation.

      B.    The ESI Protocol does not alter the parties' obligations to comply with the applicable Federal Rules of Civil Procedure or any applicable local rules regarding the production of Documents and ESI.

      C.    The Parties incorporate the provisions of the protective order that has been or will be entered in this Litigation.

      D.    Nothing in this ESI Protocol establishes any agreement regarding the subject matter or scope of discovery in this action, or the relevance, authenticity, or admissibility of any Documents or ESI.

      E.    Nothing in this ESI Protocol shall be interpreted to require production of Documents or ESI protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or any other applicable protection or privileges.  The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, ESI, or any other discovery materials, including but not limited to:  objections regarding the proportionality of the discovery request of the burden, overbreadth, or relevance of Documents, ESI, or any other discovery material.

      F.    Any documents produced prior to the entry of this Stipulated ESI Protocol are not required to comply with this ESI Protocol nor is the party producing such documents required to provide any additional metadata overlay for those documents.

      G.    The Parties may mutually modify or revise this ESI Protocol as circumstances dictate. Such modifications or revisions shall be made in writing. Should any Party propose a modification or revision to this ESI Protocol to which another Party objects, and the Parties cannot resolve their differences after a good-faith attempt to do so, the Parties may raise the matter for determination by the Court.

## II. DEFINITIONS.

As used herein:

"Document(s)" means hard-copy documents and/or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into a reasonably usable form.

"Native File(s)" or "Native Format" means the format in which Documents were created or maintained. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, native files should be collected, processed, and produced in a manner that does not alter the Metadata associated with those files.

"Metadata" means embedded data that may not be readily apparent in any document.

"Load/Unitization file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each Document begins and ends. A Load/Unitization file may also contain data relevant to the individual Documents, including extracted and user-created Metadata, coded data, and OCR or Extracted Text.

"OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

"Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

"Receiving Party" shall mean the party receiving production of Documents in this Action.

"Producing Party" shall mean the party producing Documents in this Action.

"Requesting Party" shall mean the party requesting the production of Documents in this Action.

### III. SEARCH PROCEDURES FOR DOCUMENTS AND ESI

A. <u>In General</u>. The Parties agree that Documents and ESI may be produced without a prior meet-and-confer; provided, however, that at the request of the Requesting Party, the Producing Party shall meet and confer regarding the search methodologies the Producing Party employed to identify responsive materials in any such production of Documents and ESI.

<u>Production and Supplementation of Searches for ESI</u>.  Production of responsive, non-privileged documents shall be completed on a rolling basis.  If, after reviewing ESI and documents received from the Producing Party, the Requesting Party believes that additional searches or collections may be necessary, it shall request a meet-and-confer under this paragraph, which meet-and-confer shall be conducted promptly.

<u>De-duplication</u>.  To reduce the unnecessary costs of reviewing and producing exact duplicate documents, to the extent reasonably possible and accounting for any technical limitations of any Party's ESI, each Party will remove duplicate ESI prior to producing documents. Parties may de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). Stand-alone documents will not be compared to email or email attachments for deduplication.  ESI that is not an exact duplicate may not be removed; partial email families may not be removed; and paper documents shall not be eliminated as duplicates of responsive ESI.  No Party shall identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.  With regard to ESI, the Parties may de-duplicate globally or across more than one custodian. Duplicate e-mails or files held in different file path locations and/or by different custodians do not need to be produced. If duplicates are excluded, the load file must include the de-duplication table Metadata that shows each custodian from whom a copy of the produced document was excluded, unless such de-duplication table Metadata is not

readily available in the Producing Party's ESI platform, in which case the Producing Party shall notify the Requesting Party, and they shall meet and confer if necessary. The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families and shall be performed at a family level. In order to reduce the volume of entirely duplicative content within email threads, the Parties may but are not required to use email thread suppression.

E-Mail Threading. Where an email chain consists of more than one segment, the Producing Party may use customary threading technology such that only the most inclusive message(s) (i.e., those necessary to review the most complete text and attachments contained anywhere within the chain), any lower included emails that have attachments (if responsive), and any responsive email that includes unique content not included elsewhere in a produced email string must be produced. Conversely, **non-inclusive emails** (i.e., those with text and attachments that are contained in another (inclusive) email) will not be produced to the extent possible.

**IV.    PRODUCTION FORMAT**

The Parties agree that they will produce all documents and ESI in the imaged format as set forth below:

**A.    Paper Documents:** Paper records will be scanned or otherwise converted into electronic form from paper Documents in the following format:

1. TIFFs. All Documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for Documents requiring higher resolution or different page size. Documents with color in native format (e.g., color photographs or graphical representations) should be imaged to single page, JPEG format, to retain color. Each image file should have a unique file name which shall be the Bates number of the page.

2. In scanning paper Documents, images of Documents will be organized according to the manner in which they were maintained in the ordinary course of business, including, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the Documents were maintained, or organized and labeled to correspond to the categories in the document requests. Distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized documents.

3. Objective Coding Fields. The following objective coding fields should be provided, if applicable, but there is no requirement that a producing party objectively code Paper Documents to provide metadata that is not otherwise available:

| Field Name | Field Description |
| --- | --- |
| BegBates | Beginning Bates# (including Prefix) |
| EndBates | Ending Bates# (including Prefix) |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) |
| PgCount | Number of pages in the item |
| Custodian | Name of Custodian(s) of document (Last Name, First Name format) as available |
| Confidentiality Designation | The designated level of confidentiality pursuant to the Protective Oder |

| Field Name | Field Description |
|---|---|
| Redacted | User-generated field that will indicate redactions using "Y" for yes and "N" or Blank for no redaction |

**B.     Electronically Stored Information:** The Parties will produce ESI in TIFF format according to the following specifications:

1. All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

2. To the extent practicable, each individual document based on an electronic file shall be accompanied by a corresponding text file with text that is extracted from the electronic file. The exception to this will be redacted documents, as discussed below.

3. An image load file, in standard Opticon format (OPT), standard IPro format (LFP), or standard Summation format (DII), showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

4. Each imaged version of an electronic document will be created directly from the original electronic document.

5. The following metadata fields associated with each electronic document will be produced unless the producing Party provides to all other Parties a vendor statement establishing that, for technical reasons, a particular metadata field cannot be produced.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Custodian | Name of Custodian(s) of email(s) or file(s) produced | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| | (Last Name, First Name format) as available | | |
| Duplicate Custodian (if globally deduplicated) | Name of duplicate Custodian(s) of email(s) or file(s) produced | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | | |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| Date Last modified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| File Path | File path storage location of the document or email if the source application allows for the creation of folders | x | x |
| Native Link | Relative path to any files produced in native format | x | x |
| Text Link (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | x | x |
| Confidentiality Designation | The designated level of confidentiality pursuant to the Protective Oder. | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Hash Value | MD5 or SHA-1 hash value used to deduplicate the data | x | X |
| Redacted | User-generated field that will indicate redactions using "Y" for yes and "N" or Blank for no redaction. | | |

6. The Parties will produce the following ESI types in native file format: (a) spreadsheets; (b) audio/video files; (c) PowerPoint presentations; and (d) any files that cannot be imaged.

7. Any document produced in native format, will be produced according to the following specifications:

    a. A unique bates number and confidentiality designation (if applicable) shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.

    b. The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; and (iii) the original name of the file.

    c. Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the bates number of the corresponding file and any confidentiality designation.

8. Absent good cause shown, a party is not required to preserve, search, collect, review, or produce the following categories of electronic files except when those files are relevant and attached to another file:

    a. Any electronic file which matches the Reference Data Set published by the National Institute of Standards and Technology's National Software Reference Library.

    b. System or executable files (.exe, .dll, etc.).

- c. Structural files not material to individual file contents that do not contain substantive content (.css, .xsl, .xml, .dtd, etc.).
- d. Documents deleted in the usual course of business before the time a preservation obligation in this Litigation came into effect.
- e. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including backup tapes, discs, SAN, and other forms of media, and that are substantially duplicative of data that are more accessible elsewhere. Absent a party's specific written notice for good cause, no party shall be required to modify or suspend procedures, including rotation of backup media, used in the usual course of business to back up data and systems for data recovery purposes.
- f. Deleted, slack, fragmented, or unallocated data.
- g. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
- h. On-line access data such as temporary internet files, history files, cache files, and cookies.
- i. Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates.
- j. Instant messages, text messages, and voicemail not retained in the usual course of business or pursuant to a litigation hold.
- k. Data remaining from systems no longer in use that are unreadable

11

on the systems in use.

9. No party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

### C. Redacted Files

1. The Parties may use redactions to protect attorney-client privilege; attorney work product; joint defense privilege; information prohibited from disclosure by federal, state, or foreign statutes or regulations; medical information concerning any individual; personal identity information; and non-responsive information regarding products not at issue in this litigation.

2. Extracted text will not be provided for ESI that has been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. The portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes.

### D. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (DAT), or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of images files referenced in the image load file should match the total number of images in the production delivery.

### E. Encrypted Data/Password Protected Files

Certain files may contain encrypted data or be password protected. Encrypted data and password protected files will be produced only where the key or password can be ascertained after reasonable efforts, provided the Party identify the file

attributes (directory, size, name, extension, last modification date) of any inaccessible encrypted or password protected files.

### F. Parent-Child Relationships

For ESI documents, parent-child relationships (the association between an attachment and its parent document) shall be preserved. Attachments are to be produced contemporaneously and sequentially immediately after the parent document.

### G. Proprietary Software.

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of the ESI while still allowing for efficient and effective review by the Requesting Party.

### H. Production Media.

Unless otherwise agreed, documents and ESI will be produced on encrypted optical media (CD/DVD), external hard drive, secure FTP site, secure web-based file transfer service, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (e.g., ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: volume name, date of delivery, a technical contact (preferably whomever created the media item) so that the Receiving Party can resolve extraction issues should they arise, and where feasible, the Bates number range of the materials contained on the media item or other similar description of the item.

V.  **INADVERTENT PRODUCTION**

    A.    A Party making a claim to claw back potentially privileged or protected discovery materials may notify any Party that received such material of the claim and the basis for it in accordance with any protective order entered in this action and Federal Rule of Civil Procedure 26(b)(5)(B).

VI.  **PRIVILEGE LOGGING**

    A.    The following documents presumptively need not be included on a privilege log:

        1.    Written communications between a Party and its counsel after such counsel was retained and as related to the subject matter or conduct of this lawsuit and/or other anticipated or related litigation; or

        2.    Work product created by litigation counsel, or by an agent of litigation counsel (other than a Party), after litigation counsel was retained and as it related to the conduct of this lawsuit and/or other anticipated litigation.

    B.    An email thread for which a Party claims a privilege may be logged in a single entry. With respect to e-mail threads for which a Party claims a privilege, only the most inclusive e-mail shall be logged. If an embedded e-mail communication is not otherwise available, then it must separately be identified and logged.

    C.    A Party may propose to log voluminous documents that are claimed to be privileged or protected by category. The Parties will then meet and confer regarding the proposed categories.

VII.  **CONFIDENTIALITY OF PRODUCED ESI**

    Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of and afforded the protections of the separately entered Protective Order, to the extent the Protective Order is otherwise applicable thereto.

## VIII. OBJECTIONS TO ESI PRODUCTION

A. If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Producing Party, during the meet-and-confer process and as soon as the Producing Party identifies the infeasibility of the requirement at issue, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for its determination, including but not limited to the nature of any limitations on access, and an estimate of costs that might be incurred in producing such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties will meet and confer in order to attempt to agree upon appropriate modifications to the ESI Protocol before presenting any such issue to the Court. Notwithstanding anything contained herein to the contrary, a Producing Party shall not produce ESI in a format not provided for in this ESI Protocol, or otherwise requested or agreed to by the Requesting Party. If an issue arises, the issue may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

In the event that any issues relating to ESI arise which are not addressed in this ESI Protocol, the Parties shall promptly raise such issues with each other and meet and confer to resolve them. Such issues may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet-and-confer process.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated:  1/28/21                           */s/ Matthew Insley-Pruitt (w/ permission)*
                                          Attorney(s) for Plaintiff(s)

Dated:  1/28/21                           */s/ Simren K. Gill*
                                          Attorney(s) for Defendant(s)

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated: March 1, 2021

Gail J. Standish
United States Magistrate Judge

16